UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE: ROY DAY LITIGATION   :   CASE No. 95-143-MISC-J
                            :
_____:

ORDER

Roy A. Day, who has a history of vexatious litigation, seeks to file in forma pauperis five civil complaints. The problem for Day is that, in light of his history, this court has imposed sanctions of a $4,000 judgment for filing frivolous lawsuits, and Day cannot file any new suits until those sanctions are paid. Day sought to get around that problem by sending the proposed complaints to the Chief Judge for filing in the Orlando Division. That request was implicitly denied when the Chief Judge sent the materials to this division for handling. Further, Day's motions to declare the $4,000 sanction unconstitutional and to disqualify judges are meritless.

I.

On December 15, 1995, United States District Judge Steven D. Merryday entered an Order recounting in detail Day's history of vexatious

and abusive litigation. In Re: Roy Day Litigation, 976 F. Supp. 1455 (M.D. Fla. 1995). He pointed out that, in the preceding six years, Day had filed at least 62 lawsuits in this district. Id. at 1456, n. 1. He noted also that Day's filings have plagued the United States Supreme Court and the Eleventh Circuit Court of Appeals. Id. at 1458-59. In addition, Judge Merryday stated that the filings contained threatening, vile, abusive, and racist comments. Id. at 1457-58. Consequently, Judge Merryday recommended to Chief Judge John H. Moore, II, that any proposed filings be screened to determine whether the filing was frivolous or abusive. Id. at 1459. Chief Judge Moore, on December 18, 1995, agreed with the recommendation in an Order that provides for screening and the imposition of a sanction of not less than $1,000 if a proposed complaint is frivolous. See Case No. 95-143-MISC-J, Order entered December 21, 1995.

The task of screening having fallen upon me, I subsequently determined that four attempted filings were frivolous. Accordingly, I prepared reports and recommendations, recommending that monetary sanctions be imposed on Day for the submission of frivolous complaints. On May 19, 1998, United States District Judge Wm. T. Hodges adopted the

recommendations and imposed $4,000 in sanctions against Day. Id., Order entered May 20, 1998, Doc. 60. Judgment was entered against Day in that amount. Id., Doc. 61.

Day was not deterred by the sanctions, and he continued to submit numerous complaints, some of which were resubmissions of complaints previously rejected as frivolous. Accordingly, on August 27, 1998, I recommended, consistent with approaches adopted by other courts, that screening of the complaints cease until the sanctions are paid. Id., Doc. 67. Judge Hodges, on September 24, 1998, accepted the recommendation to cease screening of all of Day's complaints, and directed the Clerk not to accept any further filings until he satisfies the monetary sanctions. Id., Doc. 69.

A ten-year respite followed. However, in January 2009, Day submitted five matters, three of which appear to be similar to the present submissions. The documents were returned to Day with the explanation that they could not be filed until the $4,000 in sanctions has been satisfied. See also, id., Doc. 76. Other submissions were made in 2009 and were returned to Day for the same reason.

Day, however, continued to submit letters and purported motions, including such ludicrous requests as a transfer from a local jail to a "European Domain" or Guantanamo Bay, Cuba, because Day was a prisoner of war in danger of being murdered by "New Jersey Mafia thugs." Accordingly, a letter of April 2, 2010, from this court noted that many of Day's submissions improperly contain disparaging comments and impertinent allegations against a judge of this court. The letter stated, "Due to the scurrilous contents of your documents, your resubmission of rejected documents, and space limitations which preclude maintenance of these voluminous submissions, those documents are being disposed of." Day was advised that future submissions would not be returned.

Day then filed a petition for a writ of mandamus with the Eleventh Circuit, seeking, among other things, an order directing this court to file all of his pleadings, to refrain from destroying any of his pleadings, and to respond to his letters (Doc. 83). The petition was denied as frivolous (id., p. 3)

Day's next move was to send directly to Chief Judge Anne C. Conway five complaints, each with the same cover letter, motion to disqualify

judges, motion to proceed in forma pauperis, and motion to declare the $4,000 filing fee unconstitutional. The cover letters asked that the complaints be filed in the Orlando Division, and not sent to the Tampa Division. Chief Judge Conway did not agree to that procedure, but sent the materials to this division.

Notably, the cover letters stated that Day was trying his best to obtain a peaceful resolution. He added, "[i]n the alternative, a non-peaceful resolution will be required." That strikes me as a threat. This circumstance is particularly troubling since the submissions reflect paranoia. Accordingly, the materials will neither be returned nor destroyed; rather, they will be retained for consideration by the United States Marshals Service.

## II.

Although Day was not entitled to have his five complaints screened, I have nevertheless done so. The complaints essentially allege the following circumstances.

In 2009, Day was employed at a Wal-Mart store in Hudson, Florida. A co-worker accused Day of stalking her and he was terminated. Further, he was arrested by the Pasco County Sheriff's Office for stalking.

He was tried for the offense, apparently in Pasco County Court, and was convicted. He was sentenced to 300 days in the Pasco County Detention Center. Day has submitted five complaints arising from these circumstances.

One complaint is against Wal-Mart and Day's supervisor. Day purports to bring this as a class action. However, Day could not maintain this as a class action since he obviously cannot adequately represent the class. See Rule 23(a)(4), F.R.Civ.P.

In the complaint, Day asserts age discrimination. This claim is frivolous, however, because Day has not shown an exhaustion of administrative remedies, 29 U.S.C. 626(d); Sheffield v. UPS, 2010 WL 4721613 (11th Cir. 2010)(unpub. dec.), and has not identified a comparator. See Brillinger v. City of Lake Worth, 317 Fed. Appx. 871 (11th Cir. 2008)(unpub. dec.).

Day also complains that Wal-Mart did not have a procedure to advise an employee of a work-related issue "in a 'rapid and immediate' time frame of twelve hours." This complaint is also frivolous since there is no such legal requirement.

Notably, the complaint contains scandalous and impertinent comments. Thus, Day refers to his supervisor as a "'high school' ' bully and thug'." He calls Wal-Mart employees "derelicts, drug addicts, alcoholics, tattoo freaks, whores, [and] lesbians." These types of comments are unacceptable, as Day has been warned numerous times in the past, and, by themselves, would warrant rejection of the complaint.

This complaint, as indicated, is frivolous. Nevertheless, I do not intend to prepare a Report and Recommendation recommending additional sanctions, since that would be a waste of my time and a waste of the time of the district judge who had to review it. The exercise would be pointless because Day has not paid the sanction he already owes, and there is no reason to think he would pay additional sanctions. Nevertheless, I am reserving the right to seek sanctions for this complaint in the future if Day's conduct continues.

A second complaint is against the Pasco County Sheriff's Office, the Pasco County detective who investigated the stalking charge, and the woman who made the complaint of stalking. This complaint is not only frivolous, it is outrageous.

The frivolousness is established by Day's conviction for stalking. There is no indication that this conviction has been reversed, expunged, or declared invalid. Consequently, this action for damages is barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

In the complaint, Day calls the victim a "whore," "lesbian," "devil," "Grinch," "Frankenstein," and "Witch Magrit." This name-calling would also justify the rejection of the complaint. Moreover, I am also reserving the right to request sanctions on this complaint, but, if sanctions are requested, it would be for more than the minimum of $1,000 in light of the name-calling.

A third complaint concerns the issuance of an injunction against Day in a suit brought by the stalking victim in Pasco County Circuit Court. Day seeks to sue the judge issuing the injunction, his judicial assistant, and the lawyer representing the victim. This complaint is also frivolous.

Day has been told many times that a judge is immune from suit for actions taken in connection with a judicial proceeding. See, e.g., Report and Recommendation dated August 27, 1998, Doc. 67. Indeed, the sanctions of $4,000 were based on lawsuits against judges.

Seemingly, the judicial assistant would also be covered by immunity. In all events, the complaint is devoid of any facts alleging what the judicial assistant is supposed to have done. Thus, no claim against her has even been remotely set forth.

The victim's attorney, under Florida law, has a privilege from suit in connection with his actions in the injunction matter. Delmonico v. Trayner, __ So.3d __, 2010 WL 2382570 (Fla. App. 2010); Williams v. Carney, 157 Fed. Appx. 103, 107 (11th Cir. 2005)(unpub. dec.). That is true even if, as Day asserts, Wal-Mart provided the attorney for the victim.

The complaint, therefore, is frivolous. However, as previously explained, additional sanctions will not be pursued at this time.

A fourth complaint is nothing but raw nonsense. The forty-six page complaint names as defendants (1) the trial judge in the criminal stalking case (who Day has improperly called a racist since she is black); (2) the prosecutor; (3) an attorney who defended Day in his state appeal; (4) a court reporter; (5) another court reporter; (6) a juror; (7) a state circuit court judge who was part of a panel that considered Day's appeal; (8) United States District Judge Elizabeth A. Kovachevich; (9) United States Circuit Judge

Susan H. Black; and (10) United States Circuit Judge James L. Edmondson. There is no coherent theory stated, but it seems to be that these ten people conspired to see that Day was convicted of stalking and that the conviction would not be overturned.

As previously explained, the five judges are all entitled to immunity from suit. The prosecutor and the defense lawyer would be immune under Florida's litigation privilege. Immunity also extends to the juror. White v. Hegerhorst, 418 F.2d 894, 895 (9th Cir. 1969), cert. denied, 398 U.S. 912 (1970); Nord v. Ashley County Circuit Clerk, 966 F.2d 1459, 1992 WL 139362 at *1 (8th Cir. 1992)(unpub. dec.). Even if the two court reporters are not entitled to immunity, there are no facts alleged that would support a claim against them.

The frivolousness of the complaint is separately established by Heck v. Humphrey, supra. Thus, this action seeks money damages based on circumstances related to Day's conviction for stalking. Since, as indicated, that conviction has not been reversed, expunged, or otherwise overturned, this lawsuit is barred.

It is appropriate to add that Day's naming of Judge Kovachevich as a defendant and co-conspirator underscores the preposterousness of Day's allegations. Judge Kovachevich has not had anything to do with Day or his lawsuits for more than two decades. Accordingly, I am again reserving the right to seek sanctions for the submission of this complaint.

The fifth complaint challenges Day's conditions of confinement at the Pasco County Detention Center. Some of the allegations, such as the portions of food and the temperature at the facility, are clearly frivolous.

On the other hand, I am not prepared to say that the complaint lacks non-frivolous allegations. Thus, Day asserts that the detention guards set up dangerous inmates to attack prisoners, such as Day, who were in protective custody, because the guards disliked prisoners in protective custody. He suggests, but does not specifically say, that he was attacked as a result. Accordingly, if Day were in a position to submit a complaint for screening, I would direct him to file an amended complaint that deletes the extraneous allegations and complies with Rule 8, F.R.Civ.P. Of course, Day is not in that position since he has not paid the sanctions imposed against him for his prior abusive and frivolous lawsuits.

III.

In the materials Day sent to Chief Judge Conway, there were three sets of motions. One set consisted of motions to disqualify the judges in the Tampa Division, as well as the Eleventh Circuit judges. Obviously, Chief Judge Conway had no authority to disqualify the Eleventh Circuit judges. Seemingly, she could have at least by-passed the Tampa Division judges by directing that the complaints be filed in the Orlando Division. However, she did not do so, but directed that the complaints be sent to the Tampa Division. Thus, the motions to disqualify were implicitly denied.

A second set of motions sought a declaration that the $4,000 filing fee was unconstitutional. However, the $4,000 amount was not a filing fee, but a sanction for prior frivolous litigation.

Furthermore, the Report and Recommendation of August 27, 1998, sets forth authorities, including cases from the Fifth Circuit, that approved the approach of not accepting filings from vexatious litigants until sanctions for frivolous filings have been paid. See, e.g., Farguson v. MBank Houston, N.A., 808 F.2d 358, 360 (5th Cir. 1986). The Fifth Circuit continues

to employ that approach. McMorris v. Werner, 101 Fed. Appx. 428, 429 (5th Cir. 2004)(unpub. dec.).

The third set of motions asks to proceed in forma pauperis. For several reasons, those motions will be denied.

In the first place, this issue is not even reached until the sanctions are paid. Furthermore, the amount that is due is no longer $4,000, because interest has accrued on that amount since judgment was entered against Day on May 20, 1998. Although the judgment did not specify postjudgment interest, that makes no difference; postjudgment interest accrues automatically. Capella University v. Executive Risk Specialty Insurance Company, 617 F.3d 1040, 1051-52 (8th Cir. 2010); Tinsley v. Sea-Land Corp., 979 F.2d 1382, 1384 (9th Cir. 1992), cert. denied, 510 U.S. 817 (1993); see also U.S. Securities and Exchange Commission v. Carrillo, 325 F.3d 1268, 1271 (11th Cir. 2003). As of May 20, 1998, the postjudgment interest rate was 5.12%. Just calculating simple interest from that date, Day would owe an additional $2,457.60 as of last May 20, with interest still accruing. A more precise calculation will be made in the event Day ever decides to pay.

Furthermore, I did not believe Day's pauper oath in 1997, and I do not believe it now. In an Order of May 20, 1997, I detailed the reasons for rejecting Day's claim of indigency after Day moved to continue a hearing scheduled to examine the veracity of that claim. And, as noted in the Report and Recommendation of August 27, 1998, Day subsequently appeared at the Clerk's Office in February 1998 with $1,800 in cash to pay the filing fees for twelve complaints. He showed up three months later to tender cash to file two more complaints, but those funds were rejected because the complaints had not been screened. Day's claims of indigency were not credible.

There are indicia that show that Day's current claims of indigency are also not credible. Thus, the contact information Day submitted with his complaints show that Day rents a post office box, he has a telephone, a fax machine, two message services, and a web site. He also uses a lot of paper. All of those things cost money.

Day also acknowledges that he owns a computer and a 2010 Hyundai. While he claims that he owes more on the car than it is worth, the relatively new car indicates that someone thought that he was an acceptable credit risk based on his assets and income.

Day's web site states that he has a corporation, with two subsidiary companies and one affiliated company. He is listed as a consultant serving the international community for the Global-World-Technologic-Economy. Such a role contradicts a claim of indigency.

Under these circumstances, I am unpersuaded that Day has adequately demonstrated that he is indigent.

In any event, even if Day had made an adequate showing of indigency, the motions to proceed in forma pauperis are due to be denied. The statute providing for proceedings in forma pauperis states that, even if a filing fee is paid, an action under the section shall be dismissed if it is frivolous, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. 1915(e)(2)(B). These three categories cover all of the five complaints that Day has submitted.

For the foregoing reasons, the motions to proceed in forma pauperis are DENIED.

IV.

Day's submission of a pile of materials has again damaged the judicial system. Courts have recognized that litigants like Day have no right to "clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988), quoting Farguson v. MBank Houston, N.A., supra, 808 F.2d at 359. "The court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others." Procup v. Strickland, 792 F.2d 1069, 1074 (11th Cir. 1986)(en banc).

The injury inflicted on the judicial system and other litigants can be precisely identified in this situation. If I had not diverted to the screening of Day's complaints and the consideration of his motions, I would have taken up the next Social Security case that was sitting on my worktable. I am confident that I could have reviewed the entire 623-page administrative transcript, read the parties' memoranda, and prepared a detailed Order disposing of the case in the time I spent dealing with Day's submissions. Accordingly, that claimant, who I imagine has never before called upon the judicial system for relief, has had his request for judicial review delayed.

Moreover, all of the numerous Social Security claimants waiting in line behind him have also had their requests for review delayed. It is fundamentally unfair to make those claimants wait while an abusive litigator again causes a substantial waste of the court's time.

Accordingly, this deviation from the policy of no screening until the sanctions are paid will not be repeated. In the future, no complaints submitted by Day will be screened until the sanctions are paid. Any such complaints will either be returned to Day, or kept for the United States Marshal's review if threats are perceived. On the other hand, letters and motions will not be returned since Day has a penchant for simply resubmitting material that is returned. Also, the lack of storage space counsels against maintaining them.

IT IS SO ORDERED.

DONE and ORDERED at Tampa, Florida, this 9th day of February, 2010.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE